Case No.: 25-743

---

IN THE

# United States Court of Appeals for the Ninth Circuit

---

## Kelvin X. Singleton,

Plaintiff-Appellant,

v.

## S. Gates, et al.

Defendants-Appellees.

---

On Appeal from the United States District Court for the Central
District of California
No. 2:19-CV-08908-RGK-JC

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

UNIVERSITY OF ST. THOMAS SCHOOL OF LAW
APPELLATE CLINIC

Isaac J. Rillo
Gabrielle A. Tremblay
*Certified Law Student Representatives*

Gregory C. Sisk
*Supervising Attorney*

1000 LaSalle Ave., MSL 400
Minneapolis, MN 55403-2015
651-962-4923

Pro Bono Counsel for Plaintiff-Appellant Kelvin X. Singleton

# Table of Contents

Introduction to and Summary of Reply Brief ................................. 1

Argument in Reply ......................................................... 5

    I.    By refusing to follow the medical directions of two treating ophthalmologists for transitional lenses, prison officials were deliberately indifferent to Singleton's painful photophobia ................................. 10

        A.    Singleton testified that prison officials told him that—regardless of ophthalmologist directions—they were required to deny transitional lenses because of a categorical correctional administrative policy ...................... 10

        B.    Because both treating ophthalmologists recommended transitional lenses—which was not questioned by any qualified treating medical expert—no difference in medical opinion affords a defense against a claim of medical indifference ............................ 14

            1.    Singleton's chronic photophobia and resulting severe headaches are not disputed ..................................................... 15

            2.    Both ophthalmologists recommended transitional lenses as medically necessary ..................................................... 16

            3.    No qualified treating medical practitioner challenged the ophthalmologists' recommendations ......... 19

            4.    Defendants cite to no pertinent persuasive precedent on the question of medical indifference ............................. 23

i

C.   Singleton amply supported his claim that
      the prior settlement agreement guaranteed
      access to transitional lenses, especially
      under California's parol evidence rule ...............25

II.   After denying transitional lenses, prison officials
      refused to provide any alternative treatment for
      Singleton's ongoing suffering .......................................28

Conclusion ..........................................................................................29

Certificate of Compliance With Rule 32 Type-Volume,
      Typeface and Type Style requirements ...............................30

Proof of Service ...................................................................................31

# Table of Authorities

## Cases

*Acosta v. Suryadevera*, No. 1:08cv-1238-GMS, 2011 WL 1103058
      (E.D. Cal. Mar. 22, 2011) ..............................................23, 24

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)............ 4, 7, 19

*Brosseau v. Haugan*, 543 U.S. 194 (2004).....................................13

*Colwell v. Bannister*, 763 F.3d 1060
      (9th Cir. 2014) ...................................................... 1, 12, 13, 14

*Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975).................17

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) .....................24

*Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821
      (9th Cir. 2001) .................................................................27

*Hamilton v. Endell*, 981 F.2d 1062 (9th Cir. 1992) ...................2, 22

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) .......17

*Horsemen's Benevolent & Protective Ass'n v. Valley Racing Ass'n*, 6 Cal. Rptr. 2d 698 (Ct. App. 1992)............ 4, 27

*Manley v. Rowley*, 847 F.3d 705 (9th Cir. 2017).............................7

*Martin v. Hedgpeth*, No. C 12-3193 CRB, 2015 WL 2266486 (N.D. Cal. May 15, 2015) ..................................23, 24

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ...........8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............................................................8

*Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495 (9th Cir. 2015) ......7

*Phillips v. Borders*, No. 5:16-cv-01568-MWF, 2020 WL 2562820 (C.D. Cal. Mar. 19, 2020)..................................23, 24

*Price v. Time, Inc.,* 416 F.3d 1327 (11th Cir. 2005) .....................7–8

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ............................................................................21

*United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853 (9th Cir. 1992) ........................................................................27

*Whitman v. Mineta*, 541 F.3d 929 (9th Cir. 2008)...................16–17

*Wood v. Idaho Dep't of Corr.*, 391 F. Supp. 2d 852 (D. Idaho 2005) ..............................................................................23, 24

## Constitution of the United States

Amend. VIII...............................................................................2

# Court Rules

Federal Rules of Appellate Procedure:

Rule 32(a)(5) ..................................................................... 30

Rule 32(a)(6) ..................................................................... 30

Rule 32(a)(7)(B) ................................................................ 30

Rule 32(a)(7)(B)(ii)............................................................ 30

Federal Rules of Civil Procedure:

Rule 56(a) ............................................................................ 1

# Other Sources

Jennifer Churchill & Dan T. Gudgel, *What Is an Ophthalmologist vs Optometrist?* (July 24, 2025) https://www.aao.org/eye-health/tips-prevention/what-is-ophthalmologist ............ 21–22

## Introduction to and Summary of Reply Brief

With any motion by a defendant for summary judgment in a civil case, the question is whether the plaintiff has submitted evidence that raises a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a). In this case, the question is whether plaintiff Kelvin Singleton has presented evidence showing that treating ophthalmologists recommended transitional lenses for his photophobia, which was then obstructed by non-treating and non-expert prison agents for non-medical reasons.

Singleton declared unequivocally and specifically that two prison practitioners told him in no uncertain terms that a state-wide prison policy categorically restricted transitional lenses to a single eye condition, thus excluding him regardless of the ophthalmologists' prescription. ER-80–81; *see also* ER-149, 153, 196–97. As this Court has said, "the blanket, categorical denial of medically indicated [treatment] solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014).

In their Answering Brief (at 19–20), defendants ignore the explicit eyewitness statements by Singleton and instead ask this Court—at the summary judgment stage—to make the contrary factual finding that

1

prison officials did not rely on a policy in denying the treating expert recommended treatment. And yet defendants failed to submit a declaration by either prison practitioner denying that they had admitted exactly what Singleton said they had admitted.

Singleton also described his continuing struggles with photophobia, spoke to the severe headaches that he suffered from exposure to sunlight without transitional lenses, ER-149–51, 168, 201, and reported that two ophthalmologists had directed transitional lenses as medically necessary. ER-58–59, 60, 229. Because prison officials denied treatment by overriding medical specialists' opinions, a jury may find deliberate indifference under the Eighth Amendment. *See Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992).

In their Answering Brief (at 20–23), defendants ask this Court—again on summary judgment—to find as a matter of fact that Singleton does not suffer from photophobia, that he had not experienced headaches, and that the two treating ophthalmologists never recommended transitional lenses as medically necessary. Defendants do acknowledge that one of those ophthalmologists had again recommended transitional lenses during the very period at issue in this case, but defendants dismiss

this expert's recommendation as "unpersuasive" to show deliberate indifference by the prison officials who blocked this recommendation. Answering Brief at 22. Yet defendants presented no declaration by any treating practitioner articulating a medical disagreement with the ophthalmologists' recommendations.

Singleton's personal accounts are corroborated by additional evidence, including an expert's report on Singleton's medical history in the prior lawsuit stating that the ophthalmologist ordered transitional lenses "due to medical necessity of light photophobia," ER-60, and the actual prescription for transitional lenses that he brought with him when he was transferred to the new prison facility, ER-41, 45, 201.

Furthermore, Singleton testified that the settlement agreement for his prior medical indifference lawsuit guaranteed that the California Department of Corrections and Rehabilitation would ensure his access to transitional lenses. ER-78, 122–23, 141. Defendants presented no evidence by witness or documentation refuting this understanding of the terms of that settlement agreement.

Yet in their Answering Brief (at 23-24), defendants ask this Court— again on summary judgment—to decide against Singleton all factual

3

questions regarding the scope and terms of the settlement agreement. Without showing any conflicting contractual terms—despite the agreement being in the possession of the California Attorney General— defendants ask the Court to reject Singleton's factual account of the intent and effect of the contract.

As for California's liberal parol evidence under which "the determination of the disputed matter must be left to the jury," *Horsemen's Benevolent & Protective Ass'n v. Valley Racing Ass'n*, 6 Cal. Rptr. 2d 698, 710 (Ct. App. 1992), defendants offer no response.

As this Court has reminded, it "is axiomatic that disputes about material facts and credibility determinations must be resolved at trial, not on summary judgment." *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1113 n.5 (9th Cir. 2004). Whether the eyewitness statements of Singleton are credible and the corroborating evidence is persuasive is for the jury at trial, not the judge on summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

# Argument in Reply

In response to Kelvin Singleton's appeal from the summary judgment ruling, defendants seek to erase the plaintiff from the District Court record.

In their brief, defendants contend there is no evidence that prison officials relied on a statewide bureaucratic rule to deny transitional lenses, Answering Brief at 20; no evidence that Singleton suffered from photophobia with resulting severe headaches, *id.* at 16; no evidence that transitional lenses were medically necessary, *id.* at 20–23; and no evidence that the settlement agreement guaranteed his access to transitional lenses, *id.* at 23–24.

On closer examination, defendants actually mean there is no evidence *other* than Singleton's direct eyewitness accounts. In their discussion of the record, defendants fail to engage with Singleton's direct statements about **(1)** what prison officials admitted to him was the bureaucratic basis for obstructing his request for the transitional lenses that had been recommended by both treating ophthalmologists, ER-80, 81, 149, 196–97; **(2)** his chronic photophobia, ER-43, 153, 196, 222, 229; **(3)** the severe headaches that he has suffered for years when exposed to

intense light, ER-43, 153, 229; **(4)** what treating ophthalmologists explained to him about his photophobia and the medical need for transitional lenses, ER-41–43, 58, 150, 196, 229; and **(5)** how the settlement agreement in his prior case about treatment of his vision ensured his continuing access to transitional lenses, ER 78, 83.

To begin with, defendants are quite mistaken in suggesting there is no evidence beyond Singleton's testimony. For example, Singleton submitted documentary evidence that the ophthalmology plan for his "photophobia" included transitional lenses due to "medical necessity," ER-60, along with the prescription for transitional lenses, ER-41, 45, 201.

Nonetheless, Singleton's eyewitness accounts based on his personal knowledge and experience are more than sufficient to establish an evidentiary record that creates a genuine issue of material fact precluding entry of summary judgment. Indeed, Singleton's eyewitness statements remain unanswered by contradicting evidence in the form of declarations by the other participants to these matters—that is, actual evidence beyond mere arguments made by defense lawyers.

In their Answering Brief, defendants rely on an alternative record and point to the absence of evidence in the incomplete set of documents

6

that defendants submitted in support of their motion for summary judgment—while downplaying or simply ignoring the eyewitness accounts by Singleton.

Defendants apparently justify their redaction of the record by dismissing Singleton's statements as "self-serving" and therefore suggesting corroboration by other documentary evidence must be demanded. *See* Answering Brief at 11.

This Court has explained that a court may refuse to accept the non-moving party's statement on summary judgment only when that statement recites general conclusions rather than making factual observations:

> [B]ecause a party's own testimony will nearly always be "self-serving," the mere self-serving nature of testimony permits a court to discount that testimony where it "states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015). Moreover, a court ruling on a motion for summary judgment may not engage in "[c]redibility determinations" or "the weighing of evidence," as those are functions reserved for the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

*Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (cleaned-up).

As another court of appeals has said, "[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn

testimony even though it is self-serving." *Price v. Time, Inc.,* 416 F.3d 1327, 1345 (11th Cir. 2005).

By expurgating Singleton's accounts, defendants sidestep fundamental principles of summary judgment. The court must review the record "taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). And "questions of credibility and of the weight to be accorded particular evidence" must be resolved in favor of the nonmoving party. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991).

After Singleton's declarations based on his personal knowledge are properly credited, we discover that defendants are the parties that failed to present any evidence. For example, Singleton explained that both his primary care physician and the optometrist told him bluntly that a bureaucratic rule categorically precluded them from honoring the ophthalmologist direction for transitional lenses. ER-80–81, 149, 153. Other than lawyer arguments in the Answering Brief—arguments that of course are not evidence—defendants presented no declaration by any party or witness disputing Singleton's description of the obstructing actions and admitted reliance on a bureaucratic rule by prison officials.

8

As another example, Singleton repeatedly insisted that the settlement agreement in his prior deliberate indifference lawsuit guaranteed him access to transitional lenses. ER-78, 122–23, 141. Again, beyond unsupported assertions by counsel in briefing, defendants chose not to present the settlement contract in their counsel's possession or any witness declaration as to the terms of that agreement.

In sum, as reiterated in more detail below, Singleton amply supported his claim by direct eyewitness statements, as well as corroborating evidence, that prison officials disregarded his medical need for transitional lenses, which had been recommended by the only qualified medical experts, and instead adhered to a bureaucratic rule. For these reasons, summary judgment should be reversed.

**I.** **By refusing to follow the medical directions of two treating ophthalmologists for transitional lenses, prison officials were deliberately indifferent to Singleton's painful photophobia**

**A.** **Singleton testified that prison officials told him that—regardless of ophthalmologist directions—they were required to deny transitional lenses because of a categorical correctional administrative policy**

Based on his personal participation in the conversation, Singleton stated that his primary care physician, Dr. Nawaz, told him that, notwithstanding the recommendation of the ophthalmologist, a statewide policy allowed transitional lenses only for one specified eye condition, which categorically excluded Singleton. ER-80, 81, 153. Defendants' own counsel elicited this testimony from Singleton at his deposition:

> Q: That's what you -- okay. So is it accurate that [Dr. Nawaz] was conveying to you that he was following CDCR policy and/or -- I'm sorry. Strike that. Is it accurate that he relayed to you that he was following the policy at CSP-LAC in denying you the lenses?
>
> A: Yes.

ER-80. The optometrist gave Singleton the same answer, telling him that the statewide policy prevented him from ordering transitional lenses. ER-149, 196–97.

These specific statements by Singleton setting out the admissions by prison officials are conspicuously missing from defendants' brief. Defendants instead dismiss Singleton's "assertion in his Opening Brief that his care was denied based solely on policy [as being] unsupported by the record." Answering Brief at 19.

Even if Singleton's statements were contradicted by other evidence, they nonetheless would create a genuine issue of material fact precluding entry of summary judgment. Notably, however, defendants submitted no declaration from either Dr. Nawaz or the optometrist denying that these conversations took place or that Singleton's statements were inaccurate.

Defendants point to a nurse's medical notes saying that an optometrist said "TRANSITION LENSES. NOT MEDICALLY INDICATED AT THIS TIME." 1-SER-164. But as we said in our Opening Brief (at 36), this was simply "bureaucratic speak" by which the prison redefined the concept of "medically indicated" from a medical diagnosis to a rote administrative process to screen for a particular eye condition on a checklist.

That a prison official does not log in the official medical records that he relied on a categorical administrative mandate is hardly surprising.

11

When a person has made a controversial admission to another in a personal meeting, documentative corroboration almost invariably will be unavailable. A person engaged in obstructive behavior—or following a bureaucratic edict that precludes a medical treatment—is unlikely to formally record that conduct. And, again, neither Dr. Nawaz nor the optometrist provided any declaration that Singleton's account about these admissions was not correct.

In their Answering Brief (at 19, 20), defendants appear to confirm that a pertinent policy of some sort did exist, as they contend that the decision to refuse transitional lenses to Singleton was not based "solely on policy" or "on policy alone." A prisoner often knows of a prison policy only from what he is told by prison officials, as was true in this case. But defendants chose not to place the language of that policy on the record.

Defendants have been suspiciously cagey about the policy. Thus, they are in no position to contend, as they do on appeal, Answering Brief at 19–20, that their policy is not subject to this Court's condemnation in *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014), of a categorical administrative policy that denies medically indicated treatment as being the very "paradigm of deliberate indifference." *Id.* at 1063.

In fact, the policies are directly parallel. In *Colwell*, 763 F.2d at 1064–65, the prison rejected the physician's recommendation because the policy categorically precluded surgery unless cataracts affected both eyes. Here, the prison rejected the ophthalmologists' recommendations because the policy categorically precluded transitional lenses unless a particular eye condition was present. ER-80, 81, 149, 153, 196–97.

Singleton's eyewitness testimony about the bureaucratic obstruction is bolstered by the perplexing resistance of the prison to such a simple request. As we said in our Opening Brief (at 50–52), while Singleton explained the dramatic and pain-saving effect of transitional lenses for his daily life, the prison would experience no burdens, no costs, and no security risks. Thus, the prison's blockade suggests bureaucratic intransigence or petulant resistance by layers of prison hierarchy.

In any event, the record evidence submitted by Singleton certainly raises a genuine dispute of material fact. When a "case arises in the posture of a motion for summary judgment, [the Court is] required to view all facts and draw all reasonable inferences in favor of the nonmoving party," which here is Singleton. *See Brosseau v. Haugan*, 543 U.S. 194, 195 n.2 (2004) (per curium).

**B.     Because both treating ophthalmologists recommended transitional lenses—which was not questioned by any qualified treating medical expert—no difference in medical opinion affords a defense against a claim of medical indifference**

Defendants do not contest that both ophthalmologists—Dr. Yaplee and Dr. Wright-Scott—did indeed recommend transitional lenses for Singleton. ER-48–49, 150, 201, 229. Moreover, as the District Court acknowledged and is also uncontested, Dr. Wright-Scott examined Singleton during the very period in question (in 2020) and again recommended transitional lenses. ER-21 (citing ER-150)).

In *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014), this Court rejected a prison's argument that denial of treatment to a prisoner was a mere difference in medical opinion when prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy." *Id.* at 1069.

Unhappy with the unanimous recommendations of the treating medical specialists, that is, both ophthalmologists, defendants contend that Singleton had no photophobia with resulting headaches, that the ophthalmologists did not recommend transitional lenses as medically

14

indicated, and that other prison medical practitioners dissented from the ophthalmologists' recommendations. Answering Brief at 19–23.

Singleton's own eyewitness statements and corroborating documentary evidence show otherwise. And, indeed, defendants failed to present any declaration from another treating medical practitioner that disputes the recommendations of the treating ophthalmologists.

### 1. Singleton's chronic photophobia and resulting severe headaches are not disputed

To begin with, despite defendants' remarkable assertion that Singleton had no light sensitivity and did not suffer from headaches, Answering Brief at 21, the District Court correctly recognized these undisputed facts. The Magistrate Judge acknowledged the evidence that "[w]ithout transitional lenses, Plaintiff suffers sunlight sensitivity with headaches, blurry vision and 'spots' in his vision that limit his ability to see when he enters the building after being outside." ER-19.

By sworn declarations, Singleton directly confirmed his continuing suffering of light sensitivity and headache pain well into the period in question. ER-43, 153, 196–97, 222, 229. The Magistrate Judge acknowledged that Singleton's suffering of "serious daily pain, along with

15

the effective deprivation of all outdoor exercise, suffice at this stage to demonstrate a serious medical need." ER-189. And Singleton presented documentary evidence from an expert report summarizing the ophthalmology consultation that he suffered from photophobia. ER-60.

### 2. Both ophthalmologists recommended transitional lenses as medically necessary

Again, that both ophthalmologists recommended transitional lenses is not contested by defendants. ER-41–43, 58, 150, 229; 2-SER-268. Rather, defendants insist, contrary to the evidence, that the recommendations were not medically indicated.

In themselves, the recommendations of the ophthalmologists are sufficient to resolve this supposed factual dispute. Defendants' attempt to draw a line of separation between the repeated ophthalmology recommendations and medically necessary treatment is artificial, unsound, and finds no support in the record.

A recommendation by a medical specialist for the treatment of a prisoner's medical condition speaks for itself. At the very least, the specialist's direction raises a presumption that the recommendation was made because it is medically indicated. *See Whitman v. Mineta*, 541 F.3d

16

929, 931 (9th Cir. 2008) (the court on summary judgment must "view[] all evidence in the light most favorable to the nonmoving party"). When, as with Singleton, a prisoner is referred to a medical specialist, the results of that consultation plainly signify what that specialist deems to be the medically indicated treatment.

Next, defendants ask the Court to draw an inference in their favor that the absence of the magical words of "medically indicated" or "medically necessary" in the limited medical records submitted by defendants must mean that no such recommendation for transitional lenses was ever made. *See* Answering Brief at 22–23.

But the moving party on summary judgment is not entitled to the benefit of any inference, especially one as dubious as the reliance on notoriously incomplete prison medical records. As this Court has long said, "the moving party" on summary judgment "is not entitled to the benefit of any favorable inferences to be drawn from its moving papers." *Driscoll v. United States*, 525 F.2d 136, 137 (9th Cir. 1975). Rather, the court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (judgment as a matter of law).

17

Moreover, Singleton testified at his deposition that the transitional lenses have always been medically necessary for him, which was based on his course of medical treatment and not merely his personal opinion. ER-58. As Singleton testified, transitional lenses had been the "standard level of care" for him for many years. ER-59. Singleton had a long-time physician-patient relationship with ophthalmologist Dr. Wright-Scott, continuing into 2020, the period at issue. ER-41, 150, 229. By sworn declaration, Singleton further spoke to the chronic problems caused by the eyedrops and the directly responsive recommendations of the ophthalmologists for transitional lenses. ER-166–68.

Importantly, Singleton did present corroborating documentary support for his description of the ophthalmologists' recommendation as medically indicated. While a prisoner understandably does not have easy access to all medical records, Singleton was able to submit the expert witness report from his earlier medical indifference lawsuit. That report stated that the ophthalmology consultation belatedly obtained by Singleton produced a "Plan" of "spectacles ordered with transition due to medical necessity of light photophobia." ER-60.

18

Defendants understandably are displeased with this expert report from the prior lawsuit. Answering Brief at 11, 16. But they offer no basis for removing it from the evidentiary record, especially as they never question its authenticity. At summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The existence of this report further confirms that the medical records and notations submitted by defendants do not paint the full picture of the medical treatment, making this expert report all the more probative.

### 3. No qualified treating medical practitioner challenged the ophthalmologists' recommendations

Defendants further contend that other treating medical practitioners—specifically his primary care physician and an optometrist—disagreed with the ophthalmologists' treatment plan, thereby creating a difference in medical opinion. Answering Brief at 15. But the record does not support defendants' alternative narrative of a clash between an optometrist and an ophthalmologist.

Nothing in the record suggests the primary care physician, Dr. Nawaz, ever treated Singleton for his eye disorders. *See* ER-20, 153.

19

Indeed, in the District Court, defendants insisted that Dr. Nawaz had no responsibility for treating Singleton's eye condition. ER-73. They cannot reverse position and contend otherwise now.

That leaves only the optometrist who fitted Singleton for glasses, whose nurse admittedly did include a notation that transitional lenses were not medically indicated. 1-SER-164. As we discussed above, this unexplained and cryptic notation was simply shorthand by the optometrist for adhering to the prison policy that categorically excluded Singleton from receiving treatment for his vision condition. *See* ER-80, 81, 149, 153 (speaking to the practitioners' admissions that they denied the transitional lenses by reason of a state-wide policy).

Notably, this notation offers no rationale, does not mention photophobia, and never acknowledges (much less takes issue with) the ophthalmology recommendations.

Instead, as related by Singleton, the optometrist offered no competing diagnosis and treatment prescription, but simply refused to allow transitional lenses by reciting the prison administrative policy. ER-149. This was not treatment but the withholding of treatment. On this point, "the court should give credence to the evidence favoring the

20

nonmovant" unless the evidence supporting the movant is "uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (cleaned-up).

Importantly, far from fomenting a division among medical professionals, this optometrist never expressed disagreement with the ophthalmologists' medical directions for transitional lenses. Indeed, it would be remarkable and unheard of for an optometrist to countermand the direction of an ophthalmologist, who is a medical doctor and specialist in eye diseases and conditions. And defendants did not submit any declaration by this optometrist presenting any supposed difference of opinion with the ophthalmologist.

As discussed in our Opening Brief (at 44–46), even had the optometrist provided a separate diagnosis and presumed to disagree with the medical directions of the ophthalmologists, the optometrist would not have been qualified to supersede the recommendations of the treating expert ophthalmologists. By common understanding, an ophthalmologist is a medical doctor with a medical degree. Thus, as the American Academy of Ophthalmology puts it, "an ophthalmologist is the most

21

qualified among eye care professionals to diagnose and treat a wide range of eye diseases, beyond the routine eye and vision care provided by an optometrist." Jennifer Churchill & Dan T. Gudgel, *What Is an Ophthalmologist vs Optometrist?* (July 24, 2025) https://www.aao.org/eye-health/tips-prevention/what-is-ophthalmologist.[1]

At the very least, a reasonable jury could find an optometrist's opinion would be "inferior" to that of medical doctor ophthalmologists, due to general knowledge that ophthalmologists specialize in treating eye diseases like glaucoma and have advanced medical training and licensing. *See Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992), *overruled in part on other grounds, Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002).

---

[1] We set out this statement by the American Academy of Ophthalmology as an articulation of the common understanding that was adopted by Singleton at his deposition, where he said that "[a]n optometrist is just an optometrist. An ophthalmologist is the person who I go out to see to take care of my eyes." ER-58.

22

### 4. Defendants cite to no pertinent persuasive precedent on the question of medical indifference

Finally, defendants cite four district court cases that are not relevant other than the fact that they happened to involve tinted eyewear. Answering Brief at 15–18.

In none of these cases did doctors wholly override or ignore an ophthalmologist's recommendation. Two involved no specialist recommendation at all. *Martin v. Hedgpeth*, No. C 12-3193 CRB, 2015 WL 2266486, at \*5 (N.D. Cal. May 15, 2015); *Acosta v. Suryadevera*, No. 1:08cv-1238-GMS, 2011 WL 1103058, at \*5 (E.D. Cal. Mar. 22, 2011). The other two involved prison personnel who either followed an ophthalmologist recommendation or offered a similar alternative. *Phillips v. Borders*, No. 5:16-cv-01568-MWF, 2020 WL 2562820, at \*13 (C.D. Cal. Mar. 19, 2020) (finding that the plaintiff was regularly seen by an ophthalmologist and provided tinted eyewear at all times); *Wood v. Idaho Dep't of Corr.*, 391 F. Supp. 2d 852, 863–66 (D. Idaho 2005) (explaining that the plaintiff was regularly seen by ophthalmologists and given care in light of their recommendations). In Singleton's case, the ophthalmologists' recommendations were completely obstructed by non-treating and non-specialist prison personnel. ER-80, 149, 153.

23

Further, in only one of the cases did the plaintiff have glaucoma. *Phillips*, 2020 WL 2562820, at *2 (glaucoma and cataract surgery). In the other three cases, a different condition or different prescription medications caused the photophobia. *Wood*, 391 F. Supp. 2d at 858 (iritis); *Acosta*, 2011 WL 1103058, at *1 (side effect to Prozac); *see also Martin*, 2015 WL 2266486, at *5 (no apparent medical condition). For example, the plaintiff in *Wood* had iritis, a condition that inconsistently flares up and causes photophobia. 391 F. Supp. 2d at 858. Consequently, the defendants were not deliberately indifferent for failing to give him treatment when his iritis was not flaring up. *Id.* at 860. By contrast, Singleton's photophobia is unrelenting because glaucoma is incurable. At the time in question, when defendants claim he was relying solely on "past medical records," Answering Brief at 16, Singleton's glaucoma still required eyedrops that cause light sensitivity, ER-19, 167.

Defendants' faulty analogy to *Wood* reinforces the need to make an individual medical assessment of each prisoner. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th Cir. 2019) ("We . . . emphasize that the analysis here is individual to [the plaintiff] and rests on the record in this case."). One condition may require transitional lenses, while another may

24

not. Thus, even if they were correctly decided on those particular facts, these district court decisions are not apposite simply because they involved tinted eyewear.

### C. Singleton amply supported his claim that the prior settlement agreement guaranteed access to transitional lenses, especially under California's parol evidence rule

Singleton had already won this battle. In the settlement agreement concluding his prior suit for medical indifference to his vision problems, he was guaranteed access to transitional lenses to address his ongoing suffering from light sensitivity.

Singleton was consistent in his explanations about that settlement agreement. At his deposition, he offered sworn testimony that "it was a part of my settlement that I receive these transitional lens glasses." ER-78. And he had made that point repeatedly to prison officials. ER-78, 83.

For a prisoner who has been moved repeatedly from one prison facility to another, Singleton unsurprisingly does not have a copy of that settlement agreement. But the California Attorney General's office, which represented the prison officials in both this and the prior lawsuit, presumably had ready access to it. Defendants chose not to make it part

25

of the record. Similarly, defendants submitted no witness declaration about the scope and terms of the settlement agreement.

Instead, defendants simply assert—without any supporting evidence—that because it was in a different lawsuit, the settlement agreement could not be relevant. Answering Brief at 23–24. Nothing to see here, they say, just move along.

Singleton's statements about the settlement agreement to which he was a party may not be so easily dismissed. It would hardly be surprising if a settlement in one medical case involving the CDCR as represented by the California Attorney General ensured the prisoner would receive the same medical benefit across the California prison system. After all, a real party in interest in both lawsuits was the CDCR which was represented in both cases by the Office of the California Attorney General.

Contrary to defendants' twice-repeated suggestion that Singleton is asserting that every settlement agreement in a prison case would "automatically hold" in every future situation, Answering Brief at 24, Singleton is saying that this specific settlement agreement was understood to permanently protect his access to transitional lenses. That

26

protection would continue even if the CDCR took the convenient and unilateral step of moving him from one prison facility to another.

Moreover, here too Singleton has corroborating evidence in this record. As discussed above, the medical expert in that prior lawsuit made a direct notation about the ophthalmology "Plan" for "spectacles ordered with transition due to medical necessity of light photophobia." ER-60. That this "Plan" directed by the ophthalmologist was made part of the later settlement agreement would follow as a matter of course.

There is at least a genuine question of fact here. Under governing California law, *see United Com. Ins. Serv., Inc. v. Paymaster Corp.,* 962 F.2d 853, 856 (9th Cir. 1992), a party to a contract may present "extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous." *Foad Consulting Grp., Inc. v. Azzalino,* 270 F.3d 821, 826 (9th Cir. 2001).

And, importantly, when parol evidence is presented, California directs that a dispute about contract interpretation be resolved by the jury. *Horsemen's Benevolent & Protective Ass'n v. Valley Racing Ass'n,* 6 Cal. Rptr. 2d 698, 710 (Cal. Ct. App. 1992).

Defendants offer no response to the direction of California law.

27

## II. After denying transitional lenses, prison officials refused to provide any alternative treatment for Singleton's ongoing suffering

As we argued in the Opening Brief (at 58–62), even if Singleton's transitional lenses were properly denied by the prison officials, prison officials failed for six years to offer any "alternative" relief for his pain and obstructed vision due to his photophobia. ER-151. As Singleton put it at his deposition, nobody "offer[ed] me any alternative to help me; didn't provide me with nothing." ER-85.

Defendants do not directly address this in their Answering Brief.

And yet, on appeal, defendants effectively confess their failure to provide any alternative treatment because they take the extreme position that Singleton has no light sensitivity problem at all and has not suffered severe headaches when exposed to bright sunlight. Answering Brief at 16, 21. Given that defendants refuse to acknowledge there is any medical condition at all, it is sadly unsurprising that they failed to provide any alternative treatment for what they deem to be a non-existent problem.

28

# Conclusion

For the foregoing reasons and those stated in the Opening Brief, plaintiff-appellant Kelvin X. Singleton asks this Court to reverse the District Court's judgment and remand the case for trial on the merits.

Date:  January 5, 2026          Respectfully submitted,

UNIVERSITY OF ST. THOMAS SCHOOL OF LAW
APPELLATE CLINIC

Isaac J. Rillo
Gabrielle A. Tremblay
*Certified Law Student Representatives*

/s/ Gregory C. Sisk
*Supervising Attorney*

1000 LaSalle Ave., MSL 400
Minneapolis, MN  55403-2015
651-962-4923

Pro Bono Counsel for Plaintiff-Appellant Kelvin X. Singleton

## Certificate of Compliance With Rule 32 Type-Volume, Typeface and Type Style requirements

1.    This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,165 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(ii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using a proportionally spaced typeface in 14 point Century Schoolbook.


Date:  January 5, 2026

/s/ Gregory C. Sisk

30

# Proof of Service

I, Gregory C. Sisk, hereby declare:  I am employed in Minneapolis, State of Minnesota.  I am over the age of 18 years, and not a party to the within action.  My business address is University of St. Thomas School of Law, 1000 LaSalle Ave., MSL 400, Minneapolis, MN  55403-2015.

I hereby certify that on January 5, 2026, I electronically filed the following with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF System:

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on January 5, 2026 at Minneapolis, Minnesota.

/s/ Gregory C. Sisk

31